UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANGELO WISE,

|  |  |  |
|---|---|---|
| | Petitioner, | Case No. 2:13-cv-10360 |
| v. | | Paul D. Borman |
| | | United States District Judge |
| MARY BERGHUIS, | | |
| | Respondent. | |

_____/

### OPINION AND ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS, (2) DENYING CERTIFICATE OF APPEALABILITY, AND (3) DENYING PERMISSION TO APPEAL IN FORMA PAUPERIS

Angelo Wise ("Petitioner") filed this habeas case under 28 U.S.C. § 2254. Petitioner was convicted after a jury trial in the Wayne Circuit Court of first-degree felony-murder, MICH. COMP. LAWS § 750.316; armed robbery, MICH. COMP. LAWS § 750.529; felon in possession of a firearm, MICH. COMP. LAWS § 750.224f; carrying a concealed weapon, MICH. COMP. LAWS § 750.227; and, possession of a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b. Petitioner was sentenced to life imprisonment for the first-degree murder conviction and lesser terms for his other offenses.

Petitioner raises thirteen claims in his habeas petition: (1) the prosecution failed to exercise due diligence in locating a witness; (2) Petitioner was denied the effective assistance of trial counsel; (3) the court erroneously instructed the jury; (4)

the prosecutor committed misconduct; (5) appellate counsel was ineffective for failing to request an evidentiary hearing; (6) appellate counsel was ineffective for failing to raise claims on direct appeal; (7) the jury's oath was defective; (8) Petitioner's sentences for carrying a concealed weapon and felon in possession of a firearm violate double jeopardy; (9) insufficient evidence was presented at trial to instruct the jury on the lesser offense of second-degree murder; (10) insufficient evidence was presented to sustain Petitioner's first-degree murder conviction; (11) Petitioner's jail credit was incorrectly calculated; (12) the prosecutor withheld exculpatory evidence; and, (13) the prosecutor failed to correct false testimony.

Because all of Petitioner's claims are without merit or barred by his state court procedural defaults, the Court will deny the petition. The Court will also deny a certificate of appealability and deny leave to appeal in forma pauperis.

## I. BACKGROUND

The Michigan Court of Appeals summarized the underlying facts:

> In the early morning hours of September 9, 2007, defendant went to an abandoned house in the City of Detroit. Matthew McMullen and Cordell Coleman had been selling narcotics out of the home for some time, and defendant apparently purchased narcotics from McMullen. Defendant, whom McMullen was familiar with from prior drug transactions and because he resided only a few doors from McMullen's mother, returned to the home a second time that morning with a gun and robbed McMullen and Coleman of their money, drugs, and other items. During the robbery, defendant shot and killed Coleman.

*People v. Wise*, No. 286957, 2010 WL 364190, at *1 (Mich. Ct. App. Feb. 2, 2010).

2

At Petitioner's jury trial, Matthew McMullen testified that he and Cordell Coleman sold drugs from the second story flat of an abandoned house in Detroit. McMullen knew Petitioner because he was a regular customer and lived in the neighborhood. On the date of the incident, Petitioner purchased rock cocaine from McMullen outside of the abandoned house. Petitioner returned later in the day to make another drug purchase. Petitioner was short one dollar to buy a five-dollar rock, but McMullen accepted the payment along with a gold chain for five more rocks.

Petitioner asked McMullen if he would be interested in buying a gun. McMullen said he was, and Petitioner told him that he would return with one. Approximately forty-five minutes later, Petitioner knocked on the door again. McMullen and Coleman went downstairs together to let Petitioner inside. Petitioner told McMullen that he was unable to get the gun, but he wanted to buy another rock.

As McMullen and Coleman started to head upstairs to get another rock of cocaine, Petitioner pulled out a rusty semi-automatic handgun. He pointed the gun at Coleman and told McMullen to give him his money or he would shoot Coleman. McMullen hesitated, and Petitioner started to count down to show that he was serious. McMullen and Coleman then placed money, drugs, and Petitioner's gold chain inside a plastic bag that Petitioner gave them. Petitioner retrieved the bag and fired the handgun as he ran out of the house.

3

McMullen and Coleman ran through the house and out of the back door. They were heading to McMullen's mother's house when Coleman told McMullen that he had been shot. McMullen saw blood coming from Coleman's chest. He helped Coleman to his mother's house, but Coleman collapsed in the front yard before they got inside. McMullen called 9-1-1.

As McMullen waited for help to arrive, Freddie Simmons, a person McMullen knew from the neighborhood, happened to drive by in his truck. McMullen waved him down, and Simmons agreed to drive them to the hospital. The truck ran out of gas, however, near the Belle Isle Bridge. McMullen told Simmons to get the police officers who were directing traffic near the bridge, but Simmons ran the other way. McMullen ran to the officers, told them about the shooting, and asked for help. The officers called an ambulance as McMullen ran back to Coleman, who was no longer responsive. McMullen tried to perform CPR until the ambulance arrived. Coleman was later declared dead at the hospital.

McMullen told the officers who arrived at the vehicle that Petitioner, who he knew by the nickname "Dee," shot Coleman. He told them where Petitioner lived and described the house. McMullen subsequently identified Petitioner's picture in a photographic array at the police station.

Detroit Police Officer Eva Wyche testified that on the night in question she was directing traffic at the Belle Isle Bridge when she was approached by McMullen,

who was crying, yelling, and hollering about his friend being shot. Officer Shannon Salisbury testified that he spoke with McMullen by the Bridge for about an hour. McMullen described the shooter, and he gave him the shooter's nickname and a description and location of Petitioner's house. Officer Ronald Hopp located Petitioner's house based on the information given, and Petitioner was subsequently identified as the suspected shooter. Other police officers investigated the location of the shooting, where they identified a blood trail leading out of the back of the house. A bullet casing was found during a subsequent search near the front door.

Detroit Police Officer Lance Sullivan interviewed Petitioner after his arrest. Petitioner told Sullivan that earlier on date of the incident he sold his gold chain to McMullen. He stated that he later sold a handgun to McMullen, and he was told to return later to collect payment for it. When Petitioner returned to the house, McMullen still did not have the money. Petitioner claimed that McMullen then pulled the gun on him, and during the resulting struggle for control of the gun McMullen accidentally shot Coleman. Petitioner told Sullivan that he then ran from the scene.

Based on this evidence, the jury found Petitioner guilty of the offenses indicated above.

Following sentencing, Petitioner filed a claim of appeal. His brief on appeal filed by his appellate counsel raised a single claim:

I. Appellant is entitled to a new trial where the trial court erred in finding due diligence as to Mr. Simmons, an endorsed witness.

Petitioner also filed a pro se supplemental brief that raised four additional claims:

I. Trial counsel failed to perform to an objective standard and provide effective assistance during trial preparation and investigation and during the trial.

II. The trial court erred by not instructing the jury regarding self-defense, manslaughter, or lost evidence.

III. The prosecutor engaged in multiple instances of prejudicial misconduct.

IV. Appellant was denied the effective assistance of appellate counsel for failing to request an evidentiary hearing or timely provide transcripts for appeal.

The Michigan Court of Appeals affirmed in an unpublished opinion. *People v. Wise*, No. 286957, 2010 WL 364190 (Mich. Ct. App. Feb. 2, 2010).

Petitioner subsequently filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims. The Michigan Supreme Court denied the application by form order. *People v. Wise*, 783 N.W.2d 344 (Mich. 2010) (Table).

Petitioner then returned to the trial court and filed his first motion for relief from judgment, raising the following six new claims:

I. The jury was given a defective jury oath, mandating reversal.

6

II. Defendant was denied the effective assistance of appellate counsel by his counsel's failure to raise his double jeopardy issues.

III. Defendant's convictions of both CCW and felon in possession and his convictions of both felony murder and armed robbery violated double jeopardy.

IV. There was insufficient evidence of malice element of second-degree murder.

V. There was insufficient evidence of malice element of felony murder.

VI. Defendant was improperly denied jail credit to his life sentence, in effect giving him an unlawful sentence of life plus 239 days.

The trial court denied the motion for relief from judgment, rejecting Petitioner's new claims because Petitioner did not show that the failure to raise them on direct appeal resulted in "actual prejudice" as required by Michigan Court Rule 6.508(D)(3)(b). (ECF No. 11-10, at 5.) Petitioner appealed this order to the Michigan Court of Appeals, but it was denied for "failure to establish entitlement to relief under Michigan Court Rule 6.508(D)." (ECF No. 12-3.) Petitioner applied for leave to appeal this decision in the Michigan Supreme Court. That court also denied relief with citation to Rule 6.508(D). (ECF No. 12-4.)

Petitioner then commenced the instant action, filing his petition for writ of habeas corpus that raised what now form his first eleven habeas claims.  (ECF No. 1.)  Petitioner thereafter asserted that he discovered new evidence to support a claim that the prosecutor suppressed exculpatory evidence and failed to correct false testimony regarding that evidence. At trial the prosecutor and police believed that a

bullet fragment had been lost. Petitioner found evidence that it had, in fact, been sent to and tested by the Michigan State Police with inconclusive results. Petitioner moved to stay the petition so that he could attempt to present these claims to the state courts. (ECF No. 21.)  The Court granted the motion.  (ECF No. 22.)

Petitioner then filed two additional motions for relief from judgment in the trial court. (ECF Nos. 52-4, 52-5.)  The motions raised what now form Petitioner's twelfth and thirteenth habeas claims. The trial court again denied post-conviction relief with citation to Rule 6.508(D)(3)(b). (ECF No. 52-8.) Petitioner applied for leave to appeal in the Michigan Court of Appeals, but that court denied relief because he "failed to establish that the trial court erred in denying his motion for relief from judgment." (ECF No. 52-9, at 1.)  Petitioner appealed to the Michigan Supreme Court, but the court denied relief on November 29, 2017, because Petitioner "failed to meet the burden of establishing entitlement to relief under Mich. Ct. R. 6.508(D)." (ECF No. 52-10, at 1.)

Petitioner filed a motion to reopen this case along with his amended petition on February 12, 2018. (ECF Nos. 36, 37.) The Court issued an order reopening the case (ECF No. 46), the parties filed additional briefing, and the case is now ready for decision.

## II. STANDARD OF REVIEW

28 U.S.C. § 2254(d) curtails federal habeas review of state convictions for claims adjudicated on the merits by state courts. A habeas petitioner must generally demonstrate that the state court adjudication was "contrary to" or "involved an unreasonable application of" clearly established Supreme Court law. *Id*. A decision is "contrary to" clearly established Supreme Court law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id*. at 409.

Under this standard, a federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 410-11. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

# III. ANALYSIS

## A. Failure to Locate Witness

Petitioner's first claim asserts that the prosecutor failed to locate and produce a witness for trial. The Michigan Court of Appeals addressed this claim during Petitioner's direct appeal and rejected it as follows:

> Before trial, Simmons was apparently in jail and the prosecutor made arrangements to have Simmons brought to court to testify. However, prior to jury selection, the prosecution informed the trial court that Simmons was no longer in custody and that several attempts to serve a subpoena had been unsuccessful. The trial judge thus agreed to sign a witness detainer order, and Simmons was located and brought to court by the police. Simmons was not called to testify that first day, and though Simmons was ordered to return the following day, he failed to appear.

> After the trial was adjourned on the second day, Officer Sullivan, with the assistance of witness Matthew McMullen, spent the next several hours, until 9:00 p.m., actively trying to locate Simmons. Additionally, both a special unit based out of the Detroit Police Department's Northeastern District and the Fugitive Apprehension Team attempted to locate Simmons. All of these attempts were unsuccessful. Even a cell phone number that the police got from Simmons's mother did not prove helpful when the person answering it hung up once the police caller identified himself.

> Defendant failed to prove that the trial court's determination that the prosecution exercised due diligence was erroneous, let alone how it would have been a "plain or obvious" error. Defendant maintains that the prosecution should have done more to secure the presence and testimony of Simmons. However, due diligence is an attempt to do everything reasonable, not everything possible, in obtaining the presence of a witness. *People v. Cummings*, 171 Mich. App. 577, 585 (1988). As such, defendant failed to prove how the police efforts on behalf of the prosecution were plainly unreasonable.

*Wise*, 2010 WL 364190, at \*1-2.

This decision did not contravene clearly established Supreme Court law. Under Michigan law, a prosecutor is required to list all witnesses he intends to call at trial. MICH. COMP. LAWS § 767.40a(1)-(2). The prosecutor must then exercise due diligence to produce those individuals. MICH. COMP. LAWS § 767.40a(3). Federal courts, however, do not enforce state laws in a habeas corpus proceeding. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). Instead, "a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). And federal law does not require the prosecutor to produce all known witnesses at trial. *See Collier v. Lafler*, 419 F. App'x 555, 559 (6th Cir. 2011); *Johnson v. Hofbauer*, 159 F. Supp. 2d 582, 601 (E.D. Mich. 2001). Accordingly, the prosecutor's alleged lack of diligence in producing Simmons at trial did not implicate Petitioner's federal rights.

Nor does Petitioner's reliance on a concept as broad as "due process" suffice to state a federal habeas claim. *Carey v. Musladin*, 549 U.S. 70 (2006). "[I]f there is no 'clearly established Federal law, as determined by the Supreme Court' that supports a habeas petitioner's legal argument, the argument must fail." *Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir. 2005) (citations omitted).

It is worth noting that Petitioner does not allege with any specificity how Simmons would have benefitted his defense. The record indicates that Simmons'

11

involvement with the case started when McMullen asked for help transporting Coleman to the hospital. There is no indication that he would have testified favorably for the defense. In fact, Petitioner attaches Simmons' police statement to his pleadings. Simmons told police that McMullen told him that a guy from the neighborhood shot Coleman. (ECF No. 38 Page.ID.2011.) McMullen's statement to Coleman, made close in time after the shooting, corroborated McMullen's later testimony and contradicted Petitioner's statement that McMullen accidentally shot Coleman. It was a fortunate turn of events for Petitioner that Simmons avoided testifying at trial.

Petitioner's first claim is without merit.

## B. Ineffective Assistance of Counsel

Petitioner's second claim, which he raised in the state courts on direct appeal in his supplemental pro se brief, asserts that he was denied the effective assistance of trial counsel for several reasons. His related fifth claim asserts that his appellate counsel was ineffective for failing to seek an evidentiary hearing on these claims. After reciting the familiar standard governing ineffective assistance of counsel claims, the Michigan Court of Appeals reviewed each allegation and rejected them on the merits:

> Defendant first argues that his trial counsel was ineffective when she failed to properly cross-examine or impeach the medical examiner's testimony, which supposedly differed from the examiner's written report. The argument is meritless. Although not introduced at

12

trial, the medical examiner's report was admitted at the preliminary examination. The salient portion described the bullet's path into the victim, Cordell Coleman, as being "rightward, upward, [and] backward." Dr. Boguslaw Pietak testified regarding the bullet's trajectory as follows:

> A. [I]n this particular case the wound track was from front to back, left to right and backward....
>
> * * *
>
> Q. Okay. And in an upward fashion –
>
> [Defense Counsel:] Objection, your Honor.
>
> [Prosecutor:] It wasn't upward[?]
>
> [Defense Counsel:] This Doctor didn't testify to upward. He said front to back, left to right, backwards. Unless I missed it.
>
> Q. Did you?
>
> A. I believe I said upward.
>
> Q. I thought so. Okay. Well, let me ask you, was there an upward – in this gunshot wound, the track, you described it in an upward direction?
>
> A. Yes, I did.
>
> Q. And what is it made from?
>
> A. It's made from the point of the entrance wound to the point where the bullet was recovered. It was higher up in the body.

It is clear from the record that the trial testimony did not differ from the contents of the report. At both proceedings, the path of the bullet was ultimately described as rightward, backward, and upward.

Dr. Pietak removed any confusion or misunderstanding at trial as to the bullet's path by testifying that he thought he had said "upward." Thus, defendant fails to show how there was any inconsistency upon which to impeach. Furthermore, defense counsel actually did, to some extent, successfully impeach the doctor's testimony by getting the doctor to admit that he could not provide an actual angle of that upward path. Accordingly, defendant failed to show how his trial counsel failed to perform at an objective standard of reasonableness under prevailing professional norms.

Defendant next argues in his Standard 4 brief that his trial counsel failed to have the medical examiner's report admitted into evidence. This argument is meritless as well. Decisions regarding what evidence to present are matters of trial strategy that will not be second-guessed by this Court. *People v. Rockey*, 237 Mich. App. 74, 76 (1999). Moreover, for the same reasons outlined above, the report did not differ from Dr. Pietak's trial testimony; thus, it would not have had the impeaching impact that defendant appears to desire. Accordingly, trial counsel was not ineffective in failing to get the contents of the report before the jury.

Third, defendant argues that his trial counsel was ineffective when she failed to object to numerous instances of prosecutorial misconduct. Defendant's argument can be summarized as such: McMullen was lying on the witness stand when he described defendant as shooting Coleman; thus, since the prosecutor was actively using and relying on this perjured testimony, the prosecutor engaged in misconduct. Prosecutors may not knowingly use false testimony, and prosecutors have a duty to correct false evidence. *People v. Lester*, 232 Mich. App. 262, 276 (1998). However, there is nothing in the record to suggest that McMullen lied on the witness stand and, even if he was lying, that the prosecution knew the testimony was false. Moreover, the fact that McMullen had not been entirely truthful when first questioned by police was addressed at length during the trial. Therefore, counsel's objection would have been futile, and counsel's failure to make a meritless objection does not constitute ineffective assistance of counsel. *People v. Matuszak*, 263 Mich. App. 42, 58 (2004).

Fourth, defendant argues that he was deprived of the effective assistance of trial counsel when his trial counsel failed to conduct a

14

thorough investigation and failed to interview Simmons and McMullen. There is nothing in the lower court record to suggest what trial counsel would have uncovered if a different investigation had taken place. Similarly, there is nothing in the lower court record to suggest what an interview with McMullen or Simmons would have yielded. Therefore, this argument fails.

Fifth, defendant argues that his trial counsel should have called defense witnesses. Specifically, defendant claims that Angela Smith and Tracy Payne were two witnesses who would have established that at 3:00 a.m., the alleged time of the shooting, defendant was with them. Defendant's argument fails for several reasons. First, there is nothing in the record to support defendant's claim of how these witnesses would have testified. Second, counsel's decisions regarding calling or questioning witnesses are presumed to be matters of trial strategy. *Rockey*, *supra* at 76. The prosecution produced a statement that defendant made to the police where defendant admitted to getting into a struggle with McMullen over the gun when it accidentally discharged, shooting Coleman. It is simple enough to understand why defense counsel would not want to call witnesses that would completely undermine the description of the event that defendant already told the police.

Sixth, defendant argues that trial counsel was ineffective by failing to investigate facts surrounding the evidence classification process of the now-closed Detroit Police Firearms Unit (DPFU). Once again, there is nothing in the record to suggest what such an investigation would have uncovered; therefore, defendant's claim fails. Moreover, there were no testing results from the DPFU that were admitted into evidence. All that was stated was that the 0.32 caliber casing found at the scene was consistent with being manufactured by a company in Brazil. The same report indicated that submission of a suspected weapon would be necessary for possible association with the casing. Thus, even if there were some inherent or systemic flaws with the evidence classification process used by the DPFU, they would have been irrelevant to this case since no meaningful testing results were derived from any DPFU testing.

\* \* \*

15

Appellate counsel may legitimately ignore weak or frivolous arguments in order to focus on genuine arguments that are more likely to succeed.  See *id.* at 186-187.  Here, the issues that defendant wanted raised, as noted in his Standard 4 brief and addressed on appeal, *supra*, Parts B-D, were not meritorious. There was little legal principle behind all of defendant's Standard 4 issues, including the ineffective assistance of trial counsel claim. As such, it is clear that appellate counsel's decision to not pursue these other claims, including not moving for a *Ginther* hearing, did not fall below an objective standard of reasonableness.

Furthermore, defendant was not prejudiced by appellate counsel's failure to pursue these other claims. Even if appellate counsel did raise these other claims, the efforts would have been unsuccessful. In other words, failing to follow up on defendant's Standard 4 claims, even if characterized as falling below an objective standard of reasonableness, did not affect the disposition of defendant's convictions. Defendant also mentions in his amended Standard 4 brief that appellate counsel should have assisted him in procuring the lower court's transcripts. However, from defendant's Standard 4 brief, it appears that the transcripts were eventually provided since excerpts were attached to his brief. As a result, defendant cannot prove that he suffered any prejudice. Therefore, defendant's claim of ineffective appellate counsel assistance fails.

*Wise*, 2010 WL 364190, at *2-5, 8-9 (footnote omitted).

Clearly established Supreme Court law sets forth a two-part test for ineffective assistance of counsel claims. First, the defendant must demonstrate that his counsel's performance was so deficient that the attorney was not functioning as "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The defendant must overcome a strong presumption that counsel's behavior fell within the wide range of reasonable professional assistance. 466 U.S. at 689. Second, the defendant must show that his counsel's deficient performance

16

prejudiced his defense. To do so, he must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694. A federal habeas court employs a "doubly deferential" standard of review that gives both the state court and the defense attorney the benefit of the doubt. *Burt v. Titlow*, 571 U.S. 12, 15 (2013).

The state court resolution of Petitioner's claims reasonably applied the *Strickland* standard. Petitioner's first two allegations concern his counsel's failure to challenge the testimony of the medical examiner, and her failure to seek admission of the autopsy report. Stated bluntly, there was nothing to be gained from further cross-examination of the medical examiner or by admission of the report. The bullet entered the front of the victim, travelled rightward, went from front to back, and moved in an upward direction in the body. The general trajectory through the body is described in the report as well as the testimony. While this information was consistent with McMullen's description of the shooting, it was also not inconsistent with Petitioner's statement to police that the victim was seated on the couch when he was accidentally shot.

Petitioner indicates that an upward trajectory was more in line with McMullen's description of Coleman being higher on a flight of stairs from the shooter, and therefore it needed to be challenged. But the medical examiner conceded on cross-examination that he could not determine the position of the

victim's body relative to the shooter based on the wound track. (ECF No. 11-5, at 169.) Petitioner does not indicate how admission of the report or further cross-examination would have undermined in any meaningful way the prosecutor's theory of the case or supported his own. He has made no showing that the medical examiner would have backed-off his upward trajectory description if pressed to do so. The allegation was reasonably rejected by the state court.

Petitioner next asserts that his counsel failed to object to the prosecutor's misconduct of allowing McMullen to testify untruthfully regarding the shooting. Prosecutors "may not knowingly present false evidence." *United States v. Fields*, 763 F.3d 443, 462 (6th Cir. 2014) (citing *Miller v. Pate*, 386 U.S. 1 (1967)). To prove that the prosecutor's presentation or failure to correct false testimony violated the Due Process Clause, a habeas petitioner must show that (1) the statement was actually and "indisputably" false; (2) the prosecution knew it was false; and (3) the statement was material. *Rosencrantz v. Lafler*, 568 F.3d 577, 583-84 (6th Cir. 2009); *Monea v. United States*, 914 F.3d 414, 421 (6th Cir. 2019).

Petitioner has not satisfied this standard. The unsurprising fact that McMullen omitted from his statement to police that he was dealing drugs out of an abandoned house was nevertheless presented during his testimony, and he explained the obvious reason for the omission. That omission from his police statement did not render his trial testimony false. McMullen's account of the incident was not contradicted by

18

any of the physical evidence nor by any other indisputable fact. Petitioner points to discrepancies and inconsistencies in McMullen's description of the shooting. The Court, however, is satisfied that this is more a case of imprecision in the description of a startling event. Imprecision and equivocation in such circumstances do not indisputably indicate falsity. And, in fact, defense counsel freely cross-examined McMullen on any perceived inconsistencies. There is therefore no basis on which to conclude that McMullen's testimony was false or that the prosecutor knew it to be false. Any objection would have been futile, and McMullen's description of the incident was instead competently handled through cross-examination.

Petitioner next asserts that his counsel was ineffective for failing to interview Simmons and McMullen prior to trial. But Petitioner completely fails to specify what facts a further or different pretrial investigation would have uncovered. He has not pointed with particularity to anything that counsel could have done prior to trial to alter McMullen's testimony. Nor is it clear how counsel's pretrial actions would have altered Simmons' decision to avoid testifying. Conclusory allegations of ineffective assistance of trial counsel such as these do not state valid claims for federal habeas relief. *See Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998).

Petitioner's allegation that his counsel should have called an alibi witness was also reasonably rejected by the state court. Petitioner admitted to police that he was present at the scene of the shooting but that the victim was accidentally shot when

McMullen and he struggled over the gun. Counsel's decision to not present an alibi defense in light of Petitioner's statement placing himself at the scene was obviously reasonable.

Petitioner's allegation that his counsel should have brought up the well documented problems with the firearm unit at the Detroit Police Department also misses the mark. There was no identification between a firearm and the casing found at the scene. In fact, there was no dispute as to which firearm fired the fatal shot. The only question was whether it was Petitioner or McMullen that fired it. The answer to that question was not aided by anything coming from the firearm unit. Defense counsel did not perform deficiently by avoiding this red herring.

Because all of Petitioner's challenges to his trial counsel are without merit, it follows that his appellate counsel was not ineffective for failing to raise the challenges on direct appeal, or by failing to seek an evidentiary hearing. *See Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010) (citing *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)).

Accordingly, Petitioner's second and fifth claims are without merit.

## C. Jury Instructions

Petitioner's third claim asserts that the trial court erroneously instructed the jury in three ways: (1) the trial court should have instructed the jury on the lesser offense of manslaughter; (2) the jury should have been instructed on self-defense;

and, (3) the court failed to give a "missing evidence" instruction with respect to the bullet fragment recovered from the victim's body that was thought to be lost.

After finding that Petitioner was not entitled to the lesser-offense instruction, the Michigan Court of Appeals rejected the other two grounds for this claim as follows:

> [N]o error was introduced when a self-defense instruction was not provided. Self-defense necessarily requires that a defendant acted intentionally, but the circumstances justified his actions. *People v. Heflin*, 434 Mich. 482, 503 (1990). The only two views of the evidence have defendant either (1) intentionally killing Coleman during a robbery without any justification or (2) participating in a struggle where Coleman was unintentionally killed. Since no reasonable view of the evidence would support a justified, intentional killing, there was no error in failing to provide the self-defense instruction.

> Defendant also maintains that he should have been given a "lost evidence" instruction. He does not specify what instruction he believes he should have been given. Presumably, he is referencing the instruction that "where the prosecution fails to make reasonable efforts to preserve material evidence, the jury may infer that the evidence would have been favorable to defendant." *People v. Davis*, 199 Mich. App. 502, 514-515 (1993). However, this instruction is only applicable when the prosecution acted in bad faith in failing to produce the evidence. *Id.* at 515. Here, defendant offers nothing in his brief to support a finding of bad faith on the part of the prosecution or the police with respect to the missing bullet. The bullet was recovered during the autopsy and was lost sometime afterward. Without any proof of bad faith, there was no error in failing to provide this instruction.

*Wise*, 2010 WL 364190, at *5-6.

Trial judges have a duty to give instructions that sufficiently explain the law.

*Kelly v. South Carolina*, 534 U.S. 246, 256 (2002). But not every deficiency in jury

instructions rises to the level of a constitutional violation. *Middleton v. McNeil*, 541 U.S. 433, 437 (2004). "[T]o warrant habeas relief, jury instructions must not only have been erroneous, but also, taken as a whole, so infirm that they rendered the entire trial fundamentally unfair." *Scott v. Mitchell*, 209 F.3d 854, 882 (6th Cir. 2000). In making that determination, the Court must bear in mind that the Supreme Court has defined the category of infractions that violate fundamental fairness very narrowly. *Dowling v. United States*, 493 U.S. 342, 352 (1990). "An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977).

Petitioner's first allegation is that the jury should have been instructed on the lesser offense of manslaughter. This claim cannot be supported by clearly established Supreme Court law. "The Constitution does not require a lesser-included offense instruction in non-capital cases." *Campbell v. Coyle*, 260 F.3d 531, 541 (6th Cir. 2001). Accordingly, the failure of a state court to instruct on a lesser included or cognate offense in non-capital cases is generally "not an error of such magnitude to be cognizable in federal habeas corpus review." *Bagby v. Sowders*, 894 F.2d 792, 797 (6th Cir. 1990) (en banc); *see also Scott v. Elo*, 302 F.3d 598, 606 (6th Cir. 2002). This allegation of instructional error is therefore without merit.

Petitioner next asserts that the jury should have been instructed on self-defense. No such instruction was warranted by the evidence. There were two

22

versions of the incident presented to the jury. The prosecutor's version presented a classic robbery-murder. Petitioner's statement, on the other hand, did involve a struggle over the gun, but he said that it was McMullen who accidentally shot Coleman as the two men struggled for control of the gun. (ECF No. 11-6, at 165-166, 181.) There was no evidence presented that Petitioner intentionally shot Coleman because he was defending himself. Given the evidence presented at trial, the state court decision was reasonable.

Finally, Petitioner asserts the jury should have been given a missing evidence instruction, directing it to presume that evidence lost by the police would have been favorable to the defense. The evidence in question was the bullet fragment recovered from the victim's body, thought to have been lost sometime after the autopsy. As the Court of Appeals found, under state law, such an instruction would have been warranted only if the prosecutor failed to make reasonable efforts to preserve the evidence – a showing Petitioner fails to make. But setting that aside, the bullet fragment was not relevant to the prosecutor's case nor to the theory of defense. Either Petitioner committed a classic robbery-murder or Coleman was accidentally shot. The competing theories did not require the recovery or testing of the bullet or casing. The failure to instruct the jury on missing evidence therefore did not render Petitioner's trial fundamentally unfair.

Petitioner's third claim is without merit.

23

## D. Prosecutorial Misconduct

Petitioner's fourth claim asserts that the prosecutor committed various acts of misconduct at trial. He claims that the prosecutor wrongfully: (1) informed the jury that Petitioner pled not guilty during his opening statement; (2) manipulated the medical examiner's testimony; (3) elicited perjured testimony by McMullen; (4) misleadingly combined the two sets of photographs taken of the scene; and, (5) substituted one officer's testimony for another who was named on the witness list. The Michigan Court of Appeals rejected the claim on the merits as follows:

> Defendant first argues that the prosecutor made improper remarks during opening statement when the prosecutor said, "[Defendant] has plead [sic] not guilty to those crimes." Defendant maintains that this statement went beyond the scope of permissible opening statements because it was not confined to the issues in the case, such as what evidence the prosecutor believes will be admitted during the trial. A prosecutor's remarks are evaluated in the context of the evidence presented and in light of defense arguments. *Rodriguez*, *supra* at 30. However, defendant fails to show how this statement deprived him of a fair trial. Aside from the fact that the statement was undeniably true, the prosecutor was merely explaining the criminal judicial process to the jury, i.e. that juries settle disputes. He then commented that defendant was charged with certain crimes, and defendant denied he was guilty. In the prosecutor's own words, "Therefore, there's a dispute." There was no prosecutorial misconduct in this statement, let alone any conduct that deprived defendant of a fair trial.

> Defendant next argues that the prosecutor misled the jury when he mischaracterized the testimony of Dr. Pietak. Specifically, defendant claims that the prosecutor "boxed the witness" into testifying that the trajectory of the bullet had an upward component. This argument lacks merit as well. It is well established that "prosecutorial misconduct cannot be predicated on good faith efforts to admit evidence." *People v. Noble*, 238 Mich. App. 647, 660 (1999). The in-court exchange was

presented, *supra*, Part B. The prosecutor thought he heard Dr. Pietak state "upward" with regard to the description of the bullet path. After defense counsel's objection, the prosecutor asked Dr. Pietak to clarify if there was an upward component. Dr. Pietak thought he stated upward previously and confirmed in now-unambiguous terms that the bullet traveled in an upward path through Coleman's body. Dr. Pietak then went into more detail regarding this conclusion, explaining that the bullet was retrieved from a "higher" location than the entrance wound. Again, defendant has failed to show how the questioning was improper or how it denied him a fair trial.

Defendant next argues that the prosecutor knowingly relied on the perjured testimony of McMullen in seeking defendant's convictions. This issue was addressed, *supra*, Part B, in the context of defendant's claim of ineffective assistance of counsel. As noted earlier, there was nothing on the record to suggest that McMullen lied on the witness stand and, even if he was lying, that the prosecution knew the testimony was false. Thus, there was no misconduct, and defendant was not denied a fair trial.

Next, defendant argues that the prosecutor intentionally wanted to mislead the jury by combining the photographs that were taken by an evidence tech team at 4:20 a.m. with those that were taken by a different evidence tech team at 4:30 p.m. Even if for some reason various photos that were taken at the different times were commingled, however, it is not clear how this would have confused the jury,[3] nor is it clear that the prosecutor was not using good-faith efforts to get the evidence admitted. The jury is fully capable of looking at the exhibits and seeing what actually is represented in the photographs without relying on what any witness or prosecutor has to say in that regard. See *Schreiner v. American Cas. Co.*, 1 Mich. App. 43, 48 (1965) (stating that jurors have the same opportunity to form opinions as witnesses from viewing photographs). Accordingly, defendant was not denied a fair trial, and his argument fails.

Last, defendant argues that the prosecution committed misconduct by having Officer Brett Sojda of the Michigan State Police testify. Once again, a prosecutor's good-faith efforts to admit evidence cannot constitute misconduct. *Noble*, *supra* at 660. Here, the prosecution originally had Officer David Pauch on its witness list. But,

at trial, the prosecutor and defense counsel stipulated to allow Officer Sojda's report and findings in lieu of Officer Pauch's testimony. Defendant has failed to show how the prosecutor was not acting in good faith. Moreover, defendant's stipulation waived any claim of error regarding the appropriateness of having Officer Sojda testify. *Begin v. Michigan Bell Telephone Co.*, 284 Mich. App. 581 (2009). Thus, defendant's claim of prosecutorial misconduct fails.

----
[3]In fact, any confusion would have benefited defendant because any discrepancy between the photos and the various testimony (that no casing was seen or found in the morning, but the ejected casing was discovered in the afternoon) would have added suspicion surrounding the police conduct.

*Wise*, 2010 WL 364190, at *6-8.

To be entitled to habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the prosecutor's conduct so infected the trial so as to render the conviction fundamentally unfair. *Parker v. Matthews*, 567 U.S. 37 (2012); *Gillard v. Mitchell*, 445 F.3d 883, 897 (6th Cir. 2006) (citing *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). If the misconduct was harmless, then as a matter of law, there was no due-process violation. *See Greer v. Miller*, 483 U.S. 756, 765 & n.7 (1987). In federal habeas, this means asking whether the error "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623, 637-38 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). The decision of the Michigan Court of Appeals did not unreasonably apply this standard.

26

First, Petitioner complains that the prosecutor informed the jury that he pled not guilty. It is not clear how this comment was improper or prejudiced Petitioner, especially because the prosecutor made the statement in the context of informing the jury of his obligation to prove Petitioner's guilty beyond a reasonable doubt:

> He has plead not guilty to those crimes. Therefore, there's a dispute. So this process that we will undergo in the next couple of days, two, three days, is what I'd like to call a search for the truth. That is, me as the prosecutor, the person who's been asked to prove his guilt beyond a reasonable doubt, and you as the jurors, will undertake this process to search for that truth to find the facts if they exist that rise to the level to tell us also that you can render a verdict that Mr. Wise is guilty or not guilty of those offenses.

(ECF No. 11-4, at 185.)

The comment, put in context, did not render Petitioner's trial fundamentally unfair.

Petitioner next asserts that the prosecutor manipulated the medical examiner to testify that the trajectory of the bullet went upwards in the victim's body. The medical examiner initially described the bullet track as going from front to back, left to right, and "backwards."  (ECF No. 11-5, at 161.) He said the bullet entered the lower left lobe of the lung, hit the seventh rib, and then lodged in the muscles in the victim's back. *Id.* The prosecutor indicated by pointing his pen to confirm the direction of the wound track. *Id.* When the prosecutor then asked if the medical examiner said "upwards," defense counsel objected, and the witness indicated that he "believed [he] said upwards," though he did not. *Id.* at 162.

27

The prosecutor did not manipulate the medical examiner's testimony. Rather, he began to ask an additional leading question about the bullet's trajectory, resulting in an objection, which nevertheless elicited the clarification that the bullet travelled upwards. Though the medical examiner had not, in fact, initially used the term "upward," nothing in the record suggests that the witness falsely altered his testimony to accommodate the prosecutor. The medical examiner evidently did conclude that there was an upwards trajectory to the wound track.  In fact, the autopsy report Petitioner claims his counsel should have admitted indicates an upward trajectory. (See ECF No. 38, at Page.ID.2049.) This brief exchange did not render Petitioner's trial fundamentally unfair.

Petitioner next asserts that the prosecutor elicited perjured testimony from McMullen. For the reasons stated above in the discussion of Petitioner's ineffective assistance of counsel claim, the allegation is meritless. Petitioner has completely failed to demonstrate that the testimony in question was false.

Petitioner also asserts that the prosecutor mixed together the two sets of photographs of the scene of the shooting that were taken on separate occasions by different officers. Petitioner has failed to show how doing so worked to his prejudice. When the first set of photographs was taken the bullet casing had not yet been discovered. It was found during a later search, and the second set of photographs showed its location. This fact was communicated to the jury during the relevant

officers' testimony. The jury was made aware of the fact that the first officers did not find a casing by the door. The manner the prosecutor later discussed and used the photographs was not misleading and did not render the trial fundamentally unfair.

Finally, Petitioner asserts that the prosecutor listed one officer as a firearm expert but called a different officer at trial. The officer in question, Trooper Sojda, testified in general about how semi-automatic handguns operate, and that bullets cannot be matched to bullet casings. (ECF No. 11-7, at 10-18.) The testimony in question was neutral given the parties' competing theories of the case, and it did not benefit the prosecutor nor the defense. Again, there was no dispute at trial that the victim was shot at the residence by a handgun originally belonging to Petitioner. The substitution of witnesses did not work to Petitioner's prejudice.

Accordingly, all of Petitioner's claims of prosecutor misconduct are without merit.

## E. Procedural Default

Petitioner's remaining claims were presented to the state courts in Petitioner's two motions for relief from judgment and the appeals that followed their denial. Respondent asserts that review of these claim is procedurally barred because the state courts denied relief based on Petitioner's failure to comply with a procedural rule.

In *Coleman v. Thompson*, 501 U.S. 722, 750 (1991), the Supreme Court held:

In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

If a habeas petitioner fails to show cause for his procedural default, it is unnecessary for the court to reach the prejudice issue. *Smith v. Murray*, 477 U.S. 527, 533 (1986). However, in an extraordinary case, where a constitutional error has probably resulted in the conviction of one who is actually innocent, a federal court may consider the constitutional claims presented even in the absence of a showing of cause for procedural default. *Murray v. Carrier*, 477 U.S. 478, 479-80 (1986). To be credible, such a claim of innocence requires that petitioner support the allegations of constitutional error with new, reliable evidence that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

Further, the Supreme Court has noted that "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on the procedural bar." *Harris v. Reed*, 489 U.S. 255, 263 (1989). If the last state court judgment contains no reasoning, but simply affirms the conviction in a standard order, the federal habeas court must look to the last reasoned state court judgment rejecting the federal claim and apply a presumption that later unexplained

30

orders upholding the judgment or rejecting the same claim rested upon the same ground. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

The Michigan Supreme Court rejected Sherman's post-conviction appeals on the ground that "the defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." (ECF Nos. 12-4 and 52-10.) The Michigan Court of Appeals likewise denied relief by unexplained orders. (ECF Nos. 12-3 and 52-9.) These orders did not refer to subsection (D)(3) of Rule 6.508, nor did they mention Petitioner's failure to raise his claims on direct appeal as the rationale for rejecting the post-conviction appeal. "Because the form orders in this case citing Rule 6.508(D) are ambiguous as to whether they refer to procedural default or denial of relief on the merits, the orders are unexplained. We must therefore look to the last reasoned state court opinion to determine the basis for the state court's rejection of [the petitioner's] claim." *Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010) (en banc).

In rejecting Petitioner's post-conviction claims, the Wayne Circuit Court indicated that Petitioner was not entitled to relief because he failed to demonstrate actual prejudice resulting from the failure to raise the new issues on direct appeal, as required by Rule 6.508(D)(3)(b). (ECF Nos. 11-10 and 52-8.) Because the trial court issued the last explained decision, and it denied Petitioner's post-conviction relief based on the procedural grounds stated in Rule 6.508(D)(3)(b), Petitioner's claims

31

are procedurally defaulted pursuant to that rule. *See Ivory v. Jackson*, 509 F.3d 284, 292-93 (6th Cir. 2007).

Petitioner contends that his post-conviction claims are nonetheless preserved for habeas review because his appellate counsel was ineffective. Petitioner has made no such showing. Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). "Th[e] process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (internal quotation marks and citation omitted). "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002).

Petitioner has failed to show that appellate counsel's performance fell outside the wide range of professionally competent assistance by omitting the claims that Petitioner raised for the first time in his post-conviction motions. Appellate counsel filed a brief on appeal raising what now forms his lead habeas claim. Petitioner has not shown that his appellate counsel's strategy in presenting this claim and not raising others was deficient or unreasonable. Indeed, the post-conviction claims seem particularly weak. Contrary to Petitioner's allegations, the jury was sufficiently

32

sworn. Petitioner's double jeopardy claim is based on an interpretation of state law conclusively rejected by the state courts. There was ample evidence to sustain Petitioner's murder conviction, given that issues of credibility are for the jury, and McMullen testified that Petitioner shot Coleman during a robbery. Finally, the jail-credit claim is mooted as a practical matter by Petitioner's mandatory life sentence. Because the defaulted claims were not "dead bang winners," Sherman has failed to establish cause for his procedural default of failing to raise them on direct review. See *McMeans v. Brigano*, 228 F.3d 674, 682-83 (6th Cir. 2000). Finally, it should be noted that Petitioner also filed a substantial pro se supplemental brief during his appeal of right, raising four additional claims. Petitioner has not explained why he omitted his defaulted claims from his own supplemental brief during his direct appeal.

The two claims that Petitioner has arguably demonstrated cause for not raising previously are his *Brady* claim and his final false evidence claim.  In his twelfth and related thirteenth habeas claims, Petitioner argues that the prosecution withheld the testing of a bullet fragment (or perhaps casing) from the crime and then failed to correct the associated incorrect trial testimony. At trial, the testimony indicated that the recovered bullet fragment went missing. Prior to his second motion for relief from judgment, Petitioner obtained a report from the Michigan State Police that the

evidence had been sent to their crime lab for testing, but that the test results were "inconclusive."

To succeed on a suppression of evidence claim, however, Petitioner is required to show that the "the nondisclosure [must have been] so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict." *Strickler v. Greene*, 527 U.S. 263, 281 (1999). A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." *United States v. Bagley*, 473 U.S. 667, 682 (1985). Petitioner fails to demonstrate prejudice under this standard because, again, the identity of the firearm used in the homicide was not relevant to the outcome of the trial. The dispute was whether Petitioner shot Coleman during a robbery or whether he was accidentally shot. The same firearm was said to have been used under both theories. Suppression, if any, of an inconclusive lab report regarding a bullet fragment does not undermine confidence in the outcome of the trial. The same thing applies to any "false" testimony about testing. Petitioner was not prejudiced by the default of these claims.

Therefore, review of the claims raised in Petitioner's two state post-conviction review proceedings is barred by his procedural default, and he has failed to demonstrate cause or prejudice to excuse the default.

As none of Petitioner's claims merit relief, the petition will be denied.

## IV. CERTIFICATE OF APPEALABILITY

In order to appeal the Court's decision, Petitioner must obtain a certificate of appealability. 28 U.S.C. § 2253(c)(2). The applicant is required to show that reasonable jurists could debate whether the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). A federal district court may grant or deny a certificate of appealability when the court issues a ruling on the habeas petition. *Castro v. United States*, 310 F.3d 900, 901 (6th Cir. 2002). Here, jurists of reason would not debate the Court's conclusion that Petitioner has failed to demonstrate entitlement to habeas relief with respect to his claims because they are devoid of merit or defaulted.

Finally, Petitioner is denied permission to appeal in forma pauperis because any appeal would be frivolous. 28 U.S.C. § 1915(a)(3).

## V. CONCLUSION

Accordingly, the Court 1) **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus, 2) **DENIES** a certificate of appealability, and 3) **DENIES** permission to appeal in forma pauperis.

**SO ORDERED.**

s/Paul D. Borman
Hon. Paul D. Borman
United States District Judge

Dated: April 16, 2020

35